**NEW ENGLAND TELEGRAPH
AND TELEPHONE**

v.

**INTERNATIONAL BROTHERS, etc.**

Civ. A. No. 72–2455–G.

United States District Court,
D. Massachusetts.

Nov. 6, 1974.

John M. Harrington, Jr., and Thomas L. P. O'Donnell, Boston, Mass., for plaintiff.

Warren H. Pyle, Boston, Mass., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This action arises under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The purpose of the action is to obtain an injunction against alleged work stoppages by the defendants contrary to a "no strike" provision of the applicable labor-management contract. Plaintiff also seeks damages for the alleged breach of contract. Section 301 confers jurisdiction in such cases.

Defendant International Brotherhood of Electrical Workers, AFL–CIO (Parent Union) and Locals 2320, 2321, 2322, 2323, 2324, 2325, 2326 and 2327, of the International Brotherhood of Electrical

Workers, AFL–CIO (Remaining Locals), being all the defendants herein except Local 2222, filed a motion for summary judgment on the ground that there is no evidence that the movants participated in any way in the dispute between plaintiff, New England Telegraph & Telephone Company (the Company), and Local 2222 which gave rise to this cause.

Briefly stated the Company changed some of its overtime practices over the objection of Local 2222. The changes affected only the Greater Boston area for which Local 2222 was the bargaining agent. By agreement between the Company and all the Locals, collectively called "the Union," all the Locals had agreed to arbitrate disputes rather than to engage in work stoppages as a means of arriving at settlements to disputes.

Local 2222, the only Local affected by the Company's overtime change, while offering to arbitrate, nevertheless engaged in interference with the Company's work for the purpose of influencing the settlement of the dispute. The Company filed its complaint against Local 2222 along with the Parent Union, International Brotherhood of Electrical Workers, AFL–CIO, and the Remaining Locals, which are the bargaining agents for workers in other parts of the Company's franchise territory.

The bases for the Company's claim against International Brotherhood of Electrical Workers, AFL–CIO, are that (1) the authority of all the Locals to negotiate the collective bargaining agreement was derived from the Parent Union, (2) the Parent Union gave its formal "approval" of the labor-management agreement between all the Locals and the Company and (3) the Parent Union had full authority and power and had the obligation to control the activities of Local 2222 under the provisions of the Parent Union's Constitution.

While the delegation of bargaining power to the Locals and the approval of the agreement by the Parent Union may be authority for holding the Parent Union liable for acts of Local 2222 in violation of the agreement, this Court would decline to do so on those bases alone. But substantially more appears.

The Constitution of the Parent Union gives it, for all practical purposes, a life and death control over the local unions. Article 1, § 1 makes it clear that local unions must acknowledge that they are each subject to the Parent Union's laws and usages and are subject to its "jurisdiction." Section 2 of Article 1 makes it even clearer.

All acts and proceedings which, in the future and in due course may be enacted shall be absolutely binding on all [Local unions], officers and members.

The Constitution refers to local unions in the possessive. See e. g. Art. 3, § 9. And this possessive attitude of parent to child is carried over in the plan of the Constitution.

The International President, acting alone, may suspend or revoke the charter of any local union (Article 4, § 8). He may "take charge of the affairs" of a local union when he deems it necessary to "advance the interest" of the membership and the Parent Union. He may suspend any local union officer or member who "offers interference" to such a takeover (Art. 4, § 9). The International President, acting alone, may suspend or remove any local union official and appoint his successor for offenses so minor (e. g. "failure to observe . . decisions of the [International President]") that it is clear that absolute control of the Parent Union over local unions is intended. Similar authority over local unions is also granted to the International Executive Council of the Parent Union (Article 9).

Though a local union is granted a "charter" the International President has the "right and power" to change the local union's territory whenever the International President thinks "such should be done," (Article 15, § 2). The International President may amalgamate, suspend and revoke the charter of any local union on terms and details deter-

mined solely by the International President (Article 15, §§ 3, 4).

With specific reference to agreements between a local union and third parties (such as the contract allegedly breached in this case) Article 17 of the Constitution requires that they must be submitted to the International President for approval. Such agreements cannot be "put into effect" without such approval and shall be "null and void," (Article 17, § 7). Section 10 of Article 17 makes a *company* violation of any agreement with any one of Parent Union's locals an annulment of that company's agreement with all other Parent Union locals.

Article 17, §§ 11–13 are set out verbatim and speak for themselves:

Sec. 11. All [local unions] shall be compelled to live up to all approved agreements unless broken or terminated by the other party or parties, which fact shall first be ascertained by the [International President]. No agreement of any kind or nature shall be abrogated without sanction of the [International President].

Sec. 12. No [local union] shall allow its members to work for any employer in difficulty with any other [local union] of the [International Brotherhood of Electrical Workers] providing the [International President] has recognized such difficulty.

Sec. 13. No [local union] shall cause or allow a stoppage of work in any controversy of a general nature before obtaining consent of the [International President]. The [International President], or his representative, has the power at any time to enter any situation or controversy involving a [local union] or any of its members, and the decision of the [International President], direct or through his representative, shall be accepted by the [local union] and its officers, subject to appeal to the [International Executive Council] and [International Convention].

■ In view of the overpowering and overwhelming control the Parent Union has over a local union in the general conduct of its affairs and in view of the specific control and responsibility the Parent Union has in respect to labor-management agreements it is impossible to absolve the Parent Union of responsibility for the acts of its local.

A local union of the International Brotherhood of Electrical Workers AFL–CIO, is merely the subservient creature of the International. The earlier reference in this memorandum to a "parent-child" relationship is not apt. The relationship is more in the nature of head to hand. The hand does what the head wills it to do.

Defendant's motion for summary judgment in favor of International Brotherhood of Electrical Workers, AFL–CIO will be denied. Eazor Express, Inc. v. International Bro. of Teamsters, 357 F.Supp. 158, 164–167 (WD/Pa.1973).

■ The remaining defendants, other than Local 2222, are deemed by the Company to be liable because; (1) they are all signatories to the contract, (2) they are collectively called, in the contract, "Union," and (3) the contract does not specifically state that the contract should apply separately to each Local. The Company makes no claim that these remaining Locals were actually involved in the dispute in any way.

The Company's contentions as to the contractual connection of the Remaining Locals is correct. It could be argued that the implied obligations explained in Eazor v. International Bro. of Teamsters, *supra*, at 164–165, apply as a result of such contractual connection. But the Company makes no such claim and it would be hard put to do so.

Each signatory Local covers separate territories—indeed separate States. This is not a case of the several locals within one bargaining unit cooperating. Nor is it a case of whipsawing by coordinated actions of locals. No allegation or claim is made by the Company

of the Remaining Locals' involvement which could render them liable in damages.

If A, B, and C, collectively called "party of the first part," enter into a contract with D, the fact that A may subsequently breach the contract does not render non-breaching B and C liable to D in damages.

Locals 2320, 2321, 2322, 2323, 2324, 2325, 2326 and 2327 of International Brotherhood of Electrical Workers, AFL–CIO, will be dismissed as parties defendant.